IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division



IRINA V. FARQUHAR,

    Plaintiff,

v.                                        Civil Action No. 1:07cv1033

UNITED STATES OF AMERICA

    Defendant.

## OPINION AND ORDER

Presently before the Court is the Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons set forth herein, the Court hereby **GRANTS** the Defendant's Motion.

## DISCUSSION

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Court must assume that all facts alleged in the complaint are true for purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Burke v. AT&T Technical Servs. Co., 55 F. Supp. 2d 432, 436 (E.D.Va. 1999). The following facts are alleged

1

in the affidavit of Irina V. Farquhar ("Plaintiff"), and are undisputed by the United States of America ("Defendant") for purposes of its Motion to Dismiss.

At some time prior to July 2006, Plaintiff, working for MCR Federal, LLC, a subcontractor of the Battelle Memorial Institute, conducted a cost-benefit analysis of the modernization of the Army ammunition logistic enterprise. (Pl.'s Aff. ¶¶ 4, 8.) In July 2006, Plaintiff met with Defense Department employees Colonel William S. Schaff, Jr. ("Colonel Schaff") and Gary J. Motsek ("Motsek") to discuss the study at Fort Belvoir. (Pl.'s Aff. ¶ 2.) Motsek[1] wanted to apply the study methodology to the modernization of the Joint Forces ammunition logistic enterprise, and Plaintiff and Motsek agreed to write a collaborative chapter on this topic in a book. (Pl.'s Aff. ¶ 5-6.) Colonel Schaff[2] wanted to apply the study methodology to the modernization of the information systems that support logistics of chemical defense and individual protective equipment. (Pl.'s Aff. ¶ 9.) Upon Colonel Schaff's request, Plaintiff was hired by Ingenuity, Inc., a subcontractor of AT&T, to complete the study. (Pl.'s Aff. ¶ 10-15.) During the course of Plaintiff's study for Colonel Schaff, she reported her hours to AT&T and her pay checks were issued by Ingenuity, Inc. (Pl.'s Aff. ¶ 16.) Plaintiff was assigned a cubicle at the Army Material Command ("AMC") at Fort Belvoir, located in the Commonwealth of Virginia, and given a computer, a Contractor Access Card ("CAC"), and badge. (Pl.'s Aff. ¶ 17-18.) At the time, Colonel Schaff was aware of Motsek and Plaintiff's

---

[1] At the time of the incident giving rise to the claim before the Court, Motsek was the Head, HQAMC G-3, Support Operations, Strategic Sustainment and Support Division. (Pl.'s Aff. ¶ 2.) Motsek is currently Assistant Deputy Under Secretary of Defense (Program Support). (Pl.'s Aff. ¶ 9.)

[2] At the time of the incident giving rise to the claim before the Court, Colonel Schaff was working at the Army Material Command ("AMC") as the Director, Strategic Sustainment and Support (Ammunition and Chemical Defense). (Pl.'s Aff. ¶ 3.)

collaborative book chapter effort. (Pl.'s Aff. ¶ 11, 19.)

On August 7, 2007, Plaintiff had a morning meeting with Motsek at the Pentagon to discuss the book chapter, during which they agreed to add Colonel Schaff as a co-author. (Pl.'s Aff. ¶ 20.) The same day, Plaintiff had an afternoon doctor's appointment regarding a worsening case of shingles of her right eye in Bethesda, Maryland. (Pl.'s Aff. ¶ 22.) She did not attend work at Fort Belvoir or report any hours that day because of these obligations. (Pl.'s Aff. ¶ 21, 23.) On August 8, 2007, Plaintiff returned to work at Fort Belvoir. (Pl.'s Aff. ¶ 24.) After Plaintiff entered her cubicle at approximately 8:00 a.m., Colonel Schaff approached her and loudly ordered her to surrender her computer to him. (Pl.'s Aff. ¶ 25-26.) Then he said, "in a loud and angry tone that could be heard by others in the area, that he could not work with [her] because [she] had ethical problems." (Pl.'s Aff. ¶ 27.) He said that he knew Plaintiff lied to him the previous day when she told him that she was sick because he saw her at the Pentagon that same morning. (Pl.'s Aff. ¶ 28.) Although Plaintiff attempted to explain the situation, Colonel Schaff nevertheless ordered her to surrender her CAC card and badge to him, and had her escorted out of the building. (Pl.'s Aff. ¶ 29-31.) After this incident, Plaintiff's contract with Ingenuity, Inc. and AT&T was terminated. (Pl.'s Comp. ¶ 13.)

On September 26, 2007, Plaintiff filed a Complaint against Colonel Schaff in the Circuit Court for the County of Fairfax for defamation seeking $100,000 in compensatory damages and $300,000 in punitive damages. On October 15, 2007, the United States filed a Notice of Substitution pursuant to 28 U.S.C. § 2679(d)(2) substituting the United States for Colonel Schaff as Defendant. The Notice of Substitution was accompanied by a Certification of Scope of Employment from the United States Attorney certifying that Colonel Schaff was acting within

the scope of his employment at the time of the incident. On October 15, 2007, the United States also filed a Notice of Removal removing the case to the United States District Court for the Easter District of Virginia, Alexandria Division. On October 30, 2007, the United States filed a Motion to Dismiss with a Memorandum in Support. On November 13, 2007, Plaintiff filed an Opposition to Motion to Dismiss with the Plaintiff's Affidavit in Support. On November 20, 2007, the United States filed a Reply to Plaintiff's Opposition. Defendant's Motion is now ripe for review by this Court.

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a claim based on a court's lack of subject matter jurisdiction, which has been defined as "authority [of a court] to adjudicate the type of controversy involved in the action." Carlisle v. United States, 517 U.S. 416, 434–35 (1996) (Ginsburg, J., concurring) (quoting Restatement (Second) of Judgments § 11 (1982)). A 12(b)(1) motion to dismiss may be made at any time by any party or raised sua sponte by the court. Fed. R. Civ. P. 12(h)(3). The party asserting subject matter jurisdiction bears the burden of proving jurisdiction exists. Capital One Fin. Corp. v. Drive Fin. Serv., L.P., 434 F. Supp. 2d 367, 371 (E.D.Va. 2006) (citations omitted). A court must regard the pleadings as mere evidence on the issue of jurisdiction, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id. Further, a court should only grant a 12(b)(1) motion to dismiss if the material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law. Nelson v. USPS, 189 F.

Supp. 2d 450, 454 (W.D.Va. 2002). Granting a party's 12(b)(1) motion to dismiss does not constitute a judgment on the merits, and is therefore without claim preclusive or res judicata effect. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

It is well settled that district courts do not have general subject matter jurisdiction over claims against the United States under the doctrine of sovereign immunity. FDIC v. Meyer, 510 U.S. 471, 475 (1994); Medina v. United States, 259 F.3d 220, 223-24 (4th Cir. 2001). Therefore, plaintiffs must demonstrate that the claim being asserted against the United States is specifically authorized by statute, such as the Federal Tort Claims Act ("FTCA"). Id. If such claim is not specifically authorized by statute or falls within an exception to the FTCA, the district court lacks subject matter jurisdiction over the claim, and the claim is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). See, e.g., Suter v. United States, 441 F.3d 306 (4th Cir. 2006).

### B. Westfall Act

In Westfall v. Erwin, the Supreme Court held that federal employees are absolutely immune from state law tort actions only if their conduct is "within the outer perimeter of an official's duties and...discretionary in nature." 484 U.S. 292, 300 (1988). In response, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act of 1998, commonly called the "Westfall Act." See 28 U.S.C. § 2679. The Westfall Act grants federal employees absolute immunity from suit for state law tort actions if the act or omission giving rise to the claim occurred while the employee was acting within the scope of his employment. Id. at § 2679(d)(2); Gutierrez De Martinez v. DEA, 111 F.3d 1148, 1154 (4th Cir. 1997). In relevant part, the Westfall Act provides:

5

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2).[3] "The Attorney General's certification is conclusive unless challenged." Id. at 1153. "When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id. "In assessing whether the plaintiff has rebutted the prima facie case, however, the district court should not defer to the Attorney General's certification, but should instead review the question de novo." Id. at 1154. However, "giving no deference to the scope-of-employment certification for substitution purposes does not render the certification a nullity. The certification 'shall conclusively establish scope of office or employment for purposes of removal,'" and, in addition, "places the burden of proof on the plaintiff, thereby requiring the plaintiff to come forward with evidence to prove that the defendant federal employee was acting outside the scope of his employment." Id. at n. 5 (citing 28 U.S.C.A. § 2679(d)(2)).

The district court, and not a jury, is responsible for assessing the sufficiency of a plaintiff's evidence with regard to the scope of employment issue. Id. at 1153 (citing 28

---

[3] 28 C.F.R. § 15.4(a) has delegated the Attorney General's authority under this statute to the United States Attorneys.

U.S.C.A. §§ 1346(b), 2402, 2679(d)(4)). Although a district court, at its discretion, may permit limited discovery and conduct an evidentiary hearing to resolve the scope of employment issue, both the discovery and any evidentiary hearings should be "circumscribed as narrowly as possible" and should only be used if "the certification, the pleadings, the affidavits, and any supporting documentary evidence" reveal an issue of material fact. Id. at 1154-55 (recognizing public policy in favor of quickly resolving the scope of employment issue for purposes of Westfall Act immunity). "Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing." Id. at 1155. In resolving the scope of employment issue, the district court must apply the respondeat superior law of the state in which the conduct occurred. Id. at 1156. If, after conducting this analysis, the court overturns the Attorney General's certification, the court must nevertheless retain jurisdiction over the case because the certification conclusively establishes scope of employment for purposes of removal. Borneman v. United States, 213 F.3d 819, 825 (4th Cir. 2000).

C.     **Federal Tort Claims Act**

Once the United States is substituted as defendant under the Westfall Act, the action proceeds pursuant to the provisions of the Federal Tort Claims Act ("FTCA"). See 28 U.S.C. §§ 1346(b), 2671-80; see also Osborn v. Haley, 127 S. Ct. 881, 888 (2007); Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 410 (1995). The FTCA authorizes tort claims against the United States for money damages "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However, Congress has enacted several exceptions to this

limited waiver of sovereign immunity, including the so-called "intentional torts proviso" which bars liability against the United States for certain intentional torts committed by its employees. 28 U.S.C. § 2680(h); see also Medina, 259 F.3d at 224. The intentional torts proviso states:

> The provisions of this chapter and section 1346(b) of this title shall not apply to –
>
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights...

28 U.S.C. § 2680(h) (emphasis added). Although the issue is not contested by Plaintiff, "[t]he United States has not waived its sovereign immunity in defamation actions." Johnson v. Carter, 983 F.2d 1316, n. 9 (4th Cir. 1993). Therefore in this case, as in Carter, "if the government is substituted as the sole defendant judgment must be entered against the plaintiff" and the Defendant's Motion to Dismiss must be granted. Id.

### III. ANALYSIS

In its Motion to Dismiss, the United States argues that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Specifically, the United States argues that, since Colonel Schaff was acting within the scope of his employment at the time of the act or omission giving rise to the claim pending before the Court, the United States was substituted as Defendant under the Westfall Act, giving Colonel Schaff absolute immunity from suit. See 28 U.S.C. § 2679(d)(2). In addition, the United States argues that, since the action against the United States was thereafter governed by the FTCA, Plaintiff's defamation claim is explicitly barred by the intentional torts proviso's

exceptions to the FTCA contained in 28 U.S.C. § 2680(h). In her Opposition to Motion to Dismiss, Plaintiff only challenges the Attorney General's certification that Colonel Schaff was acting within the scope of his employment at the time of the alleged acts or omissions at issue.

Therefore, because the alleged acts or omissions at issue occurred in the Commonwealth of Virginia at the United States Army Material Command at Fort Belvoir, the only issue presently before the Court is whether Colonel Schaff was acting within the scope of his employment under Virginia law. Under Virginia law, an employee acts within the scope of his employment if:

> (1) [The act] was expressly or impliedly directed by the employer, or is naturally incident to the business, and
>
> (2) [The act] was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequent of an attempt to do the employer's business, and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account.

Martinez, 111 F.3d at 1156 (citing Kensington Associates v. West, 234 Va. 430, 362 S.E.2d 900, 901 (Va. 1987)) (internal quotations omitted). At the time of the incident, Colonel Schaff's employer was the United States Army Material Command ("AMC"). (Pl.'s Aff. ¶ 3.)

Without citing any other legal authority, Plaintiff argues that Colonel Schaff's statements were neither directed by the AMC nor incident to the AMC's business because she was an independent contractor and because Colonel Schaffer controlled neither her activities nor her hourly compensation. (Pl.'s Opp. 4-5.) In addition, she argues that Colonel Schaff's statements were not made to further the AMC's interest because her work on the contract was satisfactory. Instead, Plaintiff alleges, without evidentiary support, that the statements were motivated by

9

Colonel Schaff's personal animosity toward her. (Pl.'s Opp. 5-6.) In contrast, the United States argues that Colonel Schaff's statements were naturally incident to the AMC's business because they were made "in the office, during the course of business, to an employee, about what he viewed as her unethical conduct related to her job performance." (Def.'s Reply 4-5.) Further, the United States argues that there is no indication that the statements were made because of personal motives or hostility. Instead, the United States alleges that Colonel Schaff's statements were motived by a professional concern about Plaintiff's ability to ethically perform her job, and that such ethical concerns are central to the concerns of his employer, the AMC. (Def.'s Reply 5-6.)

As a threshold matter, Virginia courts have recognized that even intentional torts may be within the scope of employment. See, e.g., Plummer v. Ctr. Psychiatrists, Ltd., 252 Va. 233, 476 S.E.2d 172 (1996) (holding that a psychiatrist who sexually assaulted a patient may be within the scope of employment); Commercial Bus. Sys., Inc., v. BellSouth Servs., Inc., 249 Va. 39, 453 S.E.2d 261 (1995) (holding that "willful and malicious acts" that were "outrageous and violative of [the] employer's rules" may be within the scope of employment).

More specifically, courts applying Virginia law have found that defamatory statements made in the workplace may be within the scope of employment. For example, in Carter, the United States Court of Appeals for the Fourth Circuit found that an admiral employed by the United States Navy was acting within the scope of his employment when he allegedly called a Norfolk Naval Base police officer "a liar." 983 F.2d at 1322-24. The officer had stopped the admiral's daughter for speeding, and the daughter reported to the admiral that he had been rude. Id. at 1318. The admiral had been concerned about the discourtesy of the base police officers for

some time, and, when the officer denied being rude, the admiral said, "you are a liar" and filed a formal complaint which resulted in disciplinary action against the officer. Id. Even though the admiral was working in his garden in civilian clothes at the time the defamatory remarks were allegedly made, the court found that the admiral was acting within the scope of his employment because he could exercise authority over his subordinates at any time under Navy Regulations. Id. at 1323. Although Carter's alternative holding that courts may not review the Attorney General's scope of employment certification was later abrogated by Gutierrez de Martinez v. Lamagno, 515 U.S. 417 (1995), the holding that the admiral was acting within the scope of his employment was not overturned.

Similarly, in Robinson v. Egnor, the court found that a Marshall employed by the United States Marshals Service was acting in the scope of his employment when he made allegedly defamatory statements by reporting the existence of an intimate relationship between a Court Security Officer ("CSO") and the CSO's supervisor. 699 F. Supp. 1207, 1215 (E.D.Va. 1988). The intimate relationship created a conflict of interest for the supervisor in dealing with the CSO's alleged problems in performing his job, and the Marshall's actions were therefore "squarely within the scope of his authority; they bore a direct and reasonable relationship to his duties and responsibilities." Id.

### A. Act Directed by Employer or Incident to Business

Although Defendant presents no evidence that the AMC expressly directed Colonel Schaff to respond to Plaintiff's alleged ethical problems in the manner in which he did, his conduct was impliedly directed by the AMC and naturally incident to the AMC's business. Plaintiff makes much of the fact that she was an independent contractor whom Colonel Schaff

did not directly control. However, this argument ignores the fact that Plaintiff was working at a sensitive military institution with restricted access which Colonel Schaff *did* directly control. If Colonel Schaff subjectively perceived that an employee's (or independent contractor's) "ethical problems" presented a risk to the security and operations of Fort Belvoir as a military institution, he was well within his implied authority under the AMC to ask her to surrender her computer, CAC card, and badge, and have her escorted out of the building. Access to the AMC's facilities and computer network by an independent contractor with "ethical problems" presents clear security and operational concerns. Even if Plaintiff was not working at Fort Belvoir with such access, an AMC employee responding to the "ethical problems" of an independent contractor completing a study on the AMC's behalf would certainly be "naturally incident to the business" of the AMC. Kensington, 234 Va. 430, 362 S.E.2d at 901. Just like resolving the possible conflict of interest in Robinson, resolving Plaintiff's possible ethical problems was squarely within the scope of Colonel Schaff's authority and "bore a direct and reasonable relationship to his duties and responsibilities." 699 F. Supp. at 1215.

Furthermore, as in Carter, "this case involves much more than merely the construction of the federal statute and the Virginia law on scope of employment. It has to do with the ability and obligation of one of the principal officers of the United States to perform his duty unhampered by having to answer for the same in a civil court." 983 F.2d at 1324. As the United States Court of Appeals for the Fourth Circuit acknowledged, denying officers such as Colonel Schaff immunity under the Westfall Act would create a chilling effect on their ability to make necessary decisions to protect our nation's vital security interests – interests which include the ethical integrity of personnel with access to the AMC's facilities and computer networks. Moreover,

12

Colonel Schaff's conduct occurred at the office during regular business hours where his supervisory authority was unquestioned, placing his conduct well within the bounds established by Carter, where the Court found that the admiral acted within the scope of his employment even when he was working in his garden dressed in civilian clothing. Id. at 1323.

### B. Act Performed for Employer's, Not Personal, Interest

As a threshold matter, it does not matter for purposes of Defendant's Motion to Dismiss whether Colonel Schaff's statements were actually defamatory. In fact, Colonel Schaff was likely incorrect in his assessment that Plaintiff lied to him about her whereabouts on August 7, 2007, and Plaintiff likely had no "ethical problems" that warranted Colonel Schaff's allegedly defamatory statements or the termination of her contract. However, unfortunately for Plaintiff, whether Colonel Schaff's conduct was performed "mistakenly" or "ill-advisedly" is of no consequence under Virginia law. Kensington, 234 Va. 430, 362 S.E.2d at 901. Colonel Schaff's conduct can be clearly wrong and still within the scope of his employment.

Plaintiff argues that Colonel Schaff's conduct was motivated by his personal dislike of Plaintiff and not by his intent to further the AMC's interest. However, Plaintiff cites no evidence of Colonel Schaff's personal motives other than his statement that "he could not work with [her] because [she] had ethical problems." (Pl.'s Aff. ¶ 27.) Plaintiff appears to argue that the only professional interest Colonel Schaff could have had regarding Plaintiff was whether her performance of the study pursuant to the contract was satisfactory. However, this argument ignores the fact that Colonel Schaff could have professional concerns with Plaintiff other than her tangible work product. For example, as Defendant notes, Colonel Schaff's statements on their face indicate a professional concern with Plaintiff's ability to maintain necessary standards

13

of ethical conduct at the AMC and with the security and operations of the AMC as a military institution. Whether or not the allegation is actually true, if Colonel Schaff believed Plaintiff lied to him about her reasons for being absent from work on August 7, 2007, his allegedly defamatory statements clearly stemmed "from some impulse or emotion that was the natural consequence of an attempt to do the employer's business." Id. Indeed, it is difficult to imagine an interest more vital to the AMC than identifying and addressing the unethical conduct of one of its independent contractors. The interest is certainly as significant, if not more so, than an admiral's concerns with discourteous base police officers, Carter, 983 F.2d at 1322-24, and a United States Marshall's concerns with a CSO supervisor's conflict of interest, Robinson, 699 F. Supp. at 1215.

## IV. CONCLUSION

After conducting a de novo review, the Court hereby **FINDS** the Plaintiff has not met her burden of proving by a preponderance of the evidence that Colonel Schaff's acts or omissions giving rise to the claim at issue occurred outside the scope of his employment under Virginia law. Furthermore, in order to promote the efficient resolution of scope of employment disputes arising under the Westfall Act, the Court hereby **FINDS** that discovery and an evidentiary hearing are unnecessary because there are no disputed questions of material fact relevant to the scope of employment issue.

For the foregoing reasons, the Court hereby **GRANTS** the Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and hereby **DISMISSES** Plaintiff's Complaint, with prejudice.

The Clerk of the Court is hereby **DIRECTED** to transmit a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

November 28, 2007
Norfolk, Virginia